I'd like to reserve three minutes for rebuttal. I will watch my time. Mr. Osburn brought this claim pursuant to the Social Security Act and seeks social security disability benefits and supplemental security income. At the time of the hearing, he was 58 years of age, he has a high school education, and past work is an estimated driver in carpet salesmen. There are a number of errors in the decision of the ALJ, but I'd like to start with discussing the ALJ's weight afforded to the opinion of the treating physicians. The treating physicians had taken care of Mr. Osburn for a number of years, and there is no examining consulting physician that has disagreed with any of the opinions offered by the treating physician. What we're left with is the ALJ's acceptance of the opinion of a non-treating, non-examining, testifying physician. He gave that opinion greater weight than the opinion of the treating physicians. The case was clear. In order for an administrative law judge to do this, he must do two things. One, he must cite, too, a conflict in the evidence. The conflict has to concern signs and symptoms. It's not a conflict as to functional capacity. In this case, there is no conflict as to signs and symptoms. In fact, when we, when their testifying physician stated under oath that, yes, these signs and symptoms are accurate, we agree with them. The other issue is if an ALJ is to accept the opinion of a non-examining, non-treating physician, in addition to identifying the conflicting signs, he must cite what we call an abundance of evidence, which is an extremely high standard to take. In this case, basically what the ALJ said is we have an opinion of a treating physician, we have an opinion of a testifying physician. I'm going to give greater weight to the opinion of the testifying physician. And he basically states in a blanket conclusion that he finds that the objective evidence is more consistent with the opinion of the non-treating, non-examining physician. But counsel, aren't Mr. Osborne's claims severely undercut by his various activities, his golfing and biking and walking several miles and all of this? Absolutely not, Your Honor. Mr. Osborne has severe coronary artery disease. He has stenting twice. He has a ratty right artery that they cannot bypass. And they told him he needs to exercise. The doctors recommended that he do exactly that in the form of exercise. I even asked defendant's doctor, isn't this the standard type of exercise that one would recommend for an individual with the claimant's coronary artery disease and his heart impairments? And he said yes. And the case of Regeneter basically states, look, if we're going to talk about activities, they have to be transferable to a work setting. We're not talking about activities that are done as a course of treatment. And that's what we have here. In addition to that, even if Mr. Osborne's activities would show a level of functioning where he could stand and walk for two hours a day, sit for six hours a day, lift up to ten pounds occasionally, five pounds frequently, he's still disabled. Everyone agrees that those type of restrictions would preclude Mr. Osborne from performing any of his past work. At 58 years of age, the grids say that somebody with that type of functional capacity is conclusively deemed disabled. It cannot be trumped by vocational consultant testimony. So we can't just say he's demonstrated an activity level consistent with work. He has to demonstrate an activity level that's consistent with light work, sitting at least two hours a day, standing and walking at least six hours a day, lifting frequently, 20 pounds, ten pounds occasionally. The activities have to transfer to a work setting. And the case law says that means it has to be performed for a substantial part of the day. You know, for an average person to walk, you're talking maybe 15 minutes. Fifteen miles, it's an hour. This is, I mean, four miles is an hour. Boy. My math was off. Talk about fast. But we're not talking about an eight-hour workday, five days a week on a regular and consistent basis. And I would ask you to look at the testimony of Dr. Gorin. First thing he says is he had a stent, so his heart's fine. Okay? I point out to him, well, wait a second, within a year that stent failed. He had to have another stent. It went back to a 95 to 100 percent occlusion. His response is, well, it was probably just the failure of the stent. I ask him how he knows that. He says, I don't know. It can only fail for two reasons. He can reach the nose or the equipment can fail. There's no way anyone would know. Why does he say it's equipment failure, then? We don't know. He then says the heart is superb. And I point out, Mr. Osborne has 95 percent to 100 percent occlusion on the right side. Never abated. It's still there. They talked about bypassing it. His arteries are ratty. They can't stent it. They can't do anything for it. That's what he has. He gets chest pain. He takes nitro. If you look at the medications he's on, that's just the heart. He's got two herniated discs in his neck. But Dr. Gorin also placed no restrictions on Osborne's ability to stand, walk, sit, use foot controls and so forth. That's what Dr. Gorin stated. Correct. And I would He testified as a neurologist who was a medical expert on this issue. He, I'm not sure if he's a neurologist. Yes, he definitely, he was definitely qualified as an expert. I didn't even object to that. He's testified in hearings before. But if you look at his testimony, I ask him, there's two herniated discs in the neck. Is that expected to cause pain? He says yes. I said, is the pain, could the pain decrease his functional capacity to below what you said it is? He says yes. So how do we give greater weight to that kind of testimony when we're looking at board certified physicians who have treated, they've done surgery. I haven't even spoken to you about the left knee replacement that he went through, the right leg, right knee severe degenerative disc disease, the problems he has with both elbows, the positive carpal induction study test. The guy's got so many impairments at 58 years of age. All we're talking about is an inability to do past work. And I don't know how the judge gets over the hump of looking at this treating physician whose opinions are entitled to the greatest weight pursuant to the Social Security Act, without even having a doctor look or examine Mr. Osborne, just have someone review records and say, you know what? He had three treating physicians. One was Dr. Wongo who took care of the knee. I'm sorry, who took care of the orthopedic, the right shoulder. He did the right shoulder surgery. He noted that there were radiating pains around the back. He took the cervical MRI. And anyway, there are three treating physicians. Dr. Ritchie just says he can't work without giving us a functional capacity. Dr. Wongo gives a functional capacity that he can't work if we were to apply the vocational consultant testimony. And treating physician Womack did the same thing. There are no treating physicians that say my client has a functional capacity that he'd be able to perform his past work. The judge didn't even talk about Dr. Womack's opinion. It's not even mentioned in that decision. I'm going to reserve the balance of my time. MS. SHINN, COMMISSIONER, SOCIAL SECURITY. Good morning, Your Honors. May it please the Court. I'm Gina Shinn for Commissioner Social Security. I'd like to start off just by addressing plaintiff's first argument, which is the treating physician rule. In fact, while it's generally true that the agency does accord greater weight to a treating source, the agency and ALJ is well within his discretion not to accord controlling weight where the treating source's opinion is not supported by his own findings or it's inconsistent with other substantial evidence of record. And in this case, there were multiple sources, not just the treating source Dr. Womack, but also the treating cardiologist Dr. Benison, who explicitly found that plaintiff was doing very well after stenting. I'd like to add also that many people have stenting and are perfectly functional thereafter. And the mere fact of having a stenting procedure does not necessarily render someone incapable of working. And that's the case here, Your Honors. Dr. Benison, in his examinations in 2003, noted that plaintiff actually admitted that he didn't feel any limitations in any of his daily activities. He was able to bicycle, as Your Honor noted. He bicycled regularly. He hiked. He walked. There simply wasn't that degree of limitation as he had asserted earlier. Which doctor was that again? That was Dr. Berkeley Benison, B-E-N-S-O-N. And also not only was Dr. Benison the treating cardiologist, but Dr. Richard Ritchie, who treated him and found that he had no objective reason to find why he was suffering. And also Dr. Ritchie noted that any neurology, neurological pain he was suffering was clearly controlled with medication. So that's also a treating physician. There's also a neurosurgeon who was consultatively examining the plaintiff and found that there was no evidence of any nerve root pain. And that all of these doctors opine that there were functional limitations. I mean, what he claims to have is a degenerative disease. And the ALJ discounted the 2004 reports, which to show his conditioning was worsening. In fact, there was a 2004 treating physician who said that he could not perform past work. In 2004, who had previously said, I mean previously not said that. So he was getting worse over time, which happens with dys issues, right? Certainly, sure. That was Dr. Longo's report. However, if you look at Dr. Longo's specific things, they're very minimal. They don't support a functional limitation. In fact, Dr. Longo even said, I'm only going to prescribe conservative care, where a plaintiff saying, well, maybe I should have more medication. Dr. Longo always said, no, conservative care is the way we're going. And he recovered from his arthroscopic knee surgeries. He was running up and down the stairs. He indicated, I believe it was 2002 after all the surgeries, that he was fine. He could walk one, two miles. The degree of the clinical findings that Dr. Longo identified simply don't support his conclusion that he was less than sedentary. If he, if this decision stands, but his degenerative disease keeps getting worse and worse, does it go back? Sure. He can apply for, he can file another application, but I'll note that he's, I think, already in PACE status as retirement benefits. So we're really looking at a closed period of approximately his SSI application date, and the review period ends with the period of when the ALJ's decision was issued. And that takes you to two years approximately. So I think in this case, the evidence, there's a lot of medical report. The findings, when you actually look at them, are very, very minimal. They're very benign. Plaintiff's own testimony belies that he has capacitating, you know, impairments. And he's able to do at least light work, and that's by evidence of record. And I so properly considered his credibility and discussed, well, you know, he, he has inconsistent statements. His allegations of just... Is the record clear that his past work qualifies as light? Yes, it is, Your Honor. The ALJ specifically obtained the testimony of a vocational expert who studied all the records, especially plaintiff's statements that he made describing his past work as he performed them. And while the vocational expert did say that some of that work in the national economy is performed at a higher exertional level, nonetheless, the way he performed it, it was clearly within the light work RFC. And so for that reason, he could return not only to the carpet sales job, but also the carpet estimator job, as well as the car porter. I believe it's a slight driver. Do you have to separate those two jobs to succeed in your argument? We don't, Your Honor, because he can perform all of his past relevant work. So I don't we don't the agency doesn't believe that it's necessary that it was error to split the two. But even if you split, you know, if you consolidate to one, excuse me, even if you did that, he would nonetheless be able to return to past relevant work. And that's how we measure whether or not a person is disabled. This is a step four decision. This is not a step five decision. The agency does not carry the burden to show what other jobs he can do. If plaintiff reasonably can do his past relevant work, he's not disabled under the regulations or the law in this circuit. So if there are no further questions. The agency respectfully requests that this Court affirm the decision of the district court. Thank you. Thank you, counsel. Thank you. I want to address counsel's comment regarding Dr. Ritchie and the allegation that he said that the claimant didn't have restrictions. Dr. Ritchie says that he's having knee pains and I'm not sure why he's having those knee pains. He ordered an x-ray. An x-ray shows severe degenerative joint changes. He then sends him out for a surgical consultation and then claimant has a knee replacement. That is not a statement that the claimant is okay. That was right at the front of this case. Now look at what Dr. Ritchie says afterwards, after he's had the opportunity to treat my client for a year or more. Claimant has functional limitations. Specify sit, stand, walk, lift, carry, bend, squat, kneel, all those are specified. I'm sorry, it's the other doctor that specified it. But Dr. Ritchie, that comment was made before an x-ray, before an MRI, before a knee replacement. It was made before the cervical MRI that shows two herniated discs. It was made before he had the shoulder surgery. It was made after the heart, it was made before a heart catheterization showing all these problems. I mean, they're trying to isolate each individual specific item. The cardiologist puts in a stent and says everything looks good. A year later, my client's in the hospital complaining of angina, and they have to redo the stent. It's not good. The cardiologist says we'd like to bypass your right side, but we can't because your arteries are too ratty. It's not good. They do a stress test. I think Dr. Gorin says it was superb. Look at it. We cannot interpret the terms of the stress test because the individual is on beta blockers. It's uninterpretable. We discontinued it because of fatigue. That's what the stress test says. I don't know how they can isolate each individual piece of evidence and indicate that that's evidence that the individual can do what they say he can do. My last point is, with respect to all these activities, vocational consultant was sitting at the table, heard the testimony, heard the reports of the golf, the bicycle riding, et cetera, and was asked to assume that's true. Could the claimant work? He said no, he cannot. Their interpretation that these activities are consistent with an ability to perform past work is just not substantiated by this record. All right. Thank you, counsel. Osborne v. Astruz submitted. We'll take up Meeks v. Astruz.
judges: Canby, Wardlaw, Mills